[Cite as *State ex rel. A.B. v. Stucki*, 2020-Ohio-4968.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO EX REL. A.B.

    Relator

       v.

SUMMIT COUNTY JUVENILE JUDGE
DAVID E. STUCKI

    Respondent

C.A. No.     29765

ORIGINAL ACTION IN
MANDAMUS

Dated: October 21, 2020

PER CURIAM.

{¶1} Relator, A.B., has petitioned this Court for a writ of mandamus directed to Respondent, Judge David Stucki, sitting by assignment in the Summit County Juvenile Court. Judge Stucki moved to dismiss and A.B. responded in opposition. For the following reasons, this Court grants the motion to dismiss.

{¶2} According to A.B.'s complaint, he is the natural father of three children, born during his marriage to Mother. After their divorce, Mother had custody and Father had visitation. Several years later, complaints were filed regarding the children with Summit County Children Services. The Summit County Juvenile Court held a hearing and adjudicated the children dependent. Later, the Juvenile Court ordered the children to remain in Mother's custody and suspended Father's visitation. Throughout the case, there were questions about whether the children wanted to visit with Father. For his part, Father argued that Mother engaged in parental alienation.

{¶3} The Juvenile Court held a five-day hearing on custody and visitation. At the conclusion of the hearing, the Juvenile Court retained the children in the legal custody of Mother and did not grant Father visitation.

{¶4} Father appealed to this Court. He argued that the Juvenile Court erred by failing to modify the case plan to include an assessment to address parental alienation by Mother. The Juvenile Court heard his expert witness's testimony on parental alienation, but discounted it because, in part, the expert did not interview the children or observe them with either Mother or Father.

{¶5} This Court concluded that the Juvenile Court should have considered Father's motion to modify the case plan: "the proper procedure would have been for the juvenile court to fully consider whether a case plan amendment was warranted in a separate hearing in advance of the final dispositional hearing." *In re M.B.*, 9th Dist. Summit No. 29180, 2019-Ohio-3166, ¶ 26. This Court reversed the Juvenile Court's judgment and remanded for further proceedings. *Id.* at ¶ 28.

{¶6} According to the complaint, on remand, Judge Stucki was assigned as a visiting judge. Judge Stucki held several status conferences and ordered the appointment of a "neutral evaluator for alienation/custody." He ordered the expert to clinically assess and/or treat the children for parental alienation. His order further stated that the expert "is not ordered to find, or not find Parental Alienation."

{¶7} Father objected to this order. He argued that the appointed expert was not qualified in the field of parental alienation and that Judge Stucki specifically allowed the expert to avoid a determination of whether parental alienation existed. Father further argued that this Court's decision implied that the expert appointed must be an expert in parental alienation. From

the complaint, and the attached documents, it appears that further hearings were cancelled as the Juvenile Court dealt with the coronavirus pandemic.

{¶8} Father filed a Petition for Writ of Mandamus to ask this Court to order Judge Stucki to follow this Court's mandate by immediately appointing a qualified expert in parental alienation to assess and/or treat the children for parental alienation.

*Requirements for a Writ of Mandamus and Motion to Dismiss*

{¶9} Mandamus is an extraordinary remedy, to be issued with great caution and discretion and only when the way is clear. *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166 (1977). The purpose of mandamus is to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. *Id.*

{¶10} The Ohio Supreme Court has set forth the requirements for a writ of mandamus:

> A writ of mandamus is "a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty." R.C. 2731.01. To be entitled to mandamus relief, [relator] must establish by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondents to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Love v. O'Donnell*, 150 Ohio St.3d 378, 2017-Ohio-5659, 81 N.E.3d 1250, ¶ 3.

*State ex rel. Russell v. Klatt*, 159 Ohio St.3d 357, 2020-Ohio-875, ¶ 7.

{¶11} There are limitations and boundaries for a writ of mandamus. The writ is "appropriate to require lower courts to comply with and not proceed contrary to the mandate of a superior court." *Berthelot v. Dezso*, 86 Ohio St.3d 257, 259, 1999-Ohio-100. But a writ of mandamus cannot compel the exercise of a permissive act. *State ex rel. Xenia v. Greene Cty. Bd. of Commrs.*, Slip Opinion No. 2020-Ohio-3423, citing *State ex rel. Hodges v. Taft*, 64 Ohio St.3d 1, 4 (1992). It is also well settled that mandamus does not lie to control judicial discretion. *State ex rel. Martin v. Russo*, Slip Opinion No. 2020-Ohio-829. This rule applies even if the judge has

abused the judge's discretion. *Id.* *See, also, State ex rel. Tech. Construction Specialties, Inc. v. DeWeese*, 155 Ohio St.3d 484, 2018-Ohio-5082.

{¶12} Dismissal of a petition for writ of mandamus is appropriate only if it appears beyond doubt from the complaint that the relator can prove no set of facts warranting relief, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in the relator's favor. *See, e.g., State ex rel. Martin v. Russo*, Slip Opinion No. 2020-Ohio-829, ¶ 7.

*Judge Stucki's Motion to Dismiss and Father's Response*

{¶13} Judge Stucki moved to dismiss. He argued, among other things, that the petition was premature because it anticipates that this Court's mandate will not be followed. Father responded and reiterated many of the same points he alleged in his petition.

*Analysis*

{¶14} As noted above, dismissal is appropriate only if it appears beyond doubt from the complaint, presuming all factual allegations are true and all reasonable inferences are made in Father's favor, that Father can prove no set of facts warranting relief. Mandamus is the appropriate remedy when a lower court fails to follow the mandate of a superior court. *Berthelot*, 86 Ohio St.3d at 259. That is the essence of Father's complaint: this Court entered a mandate that required the trial court to do a specific act and the trial court has failed to follow that mandate.

Determining the Mandate

{¶15} We begin by determining the scope of this Court's mandate. The Supreme Court has recognized that the Ohio "Constitution does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals." *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32 (1979). "But the use of a writ of mandamus to enforce an appellate court's mandate is

reserved for extreme cases of direct disobedience." *State ex rel. Cowan v. Gallagher*, 153 Ohio St.3d 13, 2018-Ohio-1463, ¶ 12.

{¶16} Father focuses on paragraph ten of this Court's decision in the direct appeal:

> Father argues that the juvenile court erred by failing to modify the case plan to include an assessment to determine whether the children rejected Father based on parental alienation by Mother and, if so, to include a requirement for treatment to address that specific issue. This Court agrees.

*In re M.B.* at ¶ 10. He also points to the conclusion of this Court's decision, which remanded for "further proceedings consistent with this opinion." *In re M.B.* at ¶ 28.

{¶17} To properly consider Father's argument, it is important to understand what constitutes the "mandate." According to App.R. 27, a "certified copy of the judgment shall constitute the mandate." The judgment serves as the mandate, and this Court issues a combined "Decision and Journal Entry." Thus, it is the entire opinion – the Decision and Journal Entry – of the Court that sets forth its mandate.

{¶18} Father has pointed to two passages, separated by almost 20 paragraphs of discussion and analysis, to identify the mandate. In its opinion, this Court recognized that Father raised the concern about parental alienation early in the case. *In re M.B.* at ¶ 14. In reviewing the procedural history of the underlying case, this Court again recognized that "Father repeatedly raised his concerns * * *." *Id.* at ¶ 17. This Court also recognized the difficulty Father's expert had in evaluating his claim because "she did not have access to the children's records, Mother, the ability to observe the children with either parent, or the children themselves, as she would have had the issue been included as a case plan objective." *Id.* at ¶17. Father attempted to have the Juvenile Court address parental alienation at its last hearing, and the Juvenile Court heard from Father's expert witness, but the Juvenile Court "ultimately discounted it based, in part, on the expert's failure to interview the children or observe them with either parent." *Id.* at ¶ 25.

{¶19} After recounting this lengthy history, this Court addressed the merits of Father's argument:

> Based on Father's ongoing concern that Mother had manipulated the children to reject Father, the children's complete aversion to reestablishing a relationship with Father despite their engagement in counseling and no contact with Father for eleven months, and the unwillingness of CSB and the guardian ad litem to take seriously Father's allegations because the children were safe and secure with Mother, *the juvenile court should have at a minimum considered the merits of Father's motion to modify the case plan at a time when any issue could still be addressed to effect the primary goals of supportive services*, e.g., to "respect and support the integrity of the child[ren]'s family unit." *See* Ohio Adm.Code 5101:2-40-02(A)(1). Father proposed an amendment to the case plan as permitted by R.C. 2151.412(F)(2). He requested a hearing on the matter. The juvenile court continued the hearing but then refused to consider any preliminary matters that would extend the court's jurisdiction and maintain the children under the agency's protective supervision to allow for further reunification efforts. As in *In re A.P.*, *supra, the proper procedure would have been for the juvenile court to fully consider whether a case plan amendment was warranted in a separate hearing in advance of the final dispositional hearing.*

(Emphasis added) *In re M.B.* at ¶ 26.

{¶20} This Court reversed and remanded for further proceedings consistent with this opinion. Father contends that "further proceedings consistent with this opinion" serves as the mandate and that it is tied directly to the language in paragraph ten:

> Father argues that the juvenile court erred by failing to modify the case plan to include an assessment to determine whether the children rejected Father based on parental alienation by Mother, and, if so, to include a requirement for treatment to address that specific issue. This Court agrees.

{¶21} Father asserts that this Court issued a narrow mandate: the matter is remanded for further proceedings because the Juvenile Court erred by failing to modify the case plan to include a parental alienation assessment. That combination of two separate sentences in a lengthy opinion ignores the remainder of the decision. First, paragraph ten, which appears directly after Father's Assignment of Error, provides a summary of Father's assigned error. While paragraph

ten concludes that "[t]his Court agrees[,]" those three words cannot be read in isolation as the mandate.

{¶22} This Court agreed there was error. In paragraph 26, this Court summarized Father's repeated efforts to ask the Juvenile Court to consider parental alienation. This Court concluded that "the juvenile court should have at a minimum considered the merits of Father's motion to modify the case plan at a time when any issue could still be addressed to effect the primary goals of supportive services * * *." *In re M.B.* at ¶ 26. At the end of paragraph 26, this Court identified the proper procedure: the Juvenile Court should have fully considered whether a case plan amendment was warranted.

{¶23} Thus, the mandate ordered that the matter was remanded for the Juvenile Court to consider the merits of Father's motion and whether a case plan amendment was warranted. That was precisely the error Father assigned and that this Court sustained:

## ASSIGNMENT OF ERROR II

THE COURT'S REFUSAL TO MODIFY THE CASE PLAN TO CLINICALLY ASSESS THE CHILDREN AND/OR TREAT THE CHILDREN FOR PARENTAL ALIENATION WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### Following the Mandate

{¶24} We conclude this Court's mandate directed the Juvenile Court to consider the merits of Father's motion and whether a case plan amendment was warranted. We next must determine whether Judge Stucki disobeyed this Court's mandate on remand. A writ of mandamus is the appropriate remedy to challenge a trial court's failure to follow the mandate, but it is reserved for extreme cases of direct disobedience. *Cowan*, 153 Ohio St.3d 13, 2018-Ohio-1463, ¶ 12.

{¶25}  Judge Stucki, according to the complaint, scheduled a hearing in September, the month after this Court's decision was filed.  Judge Stucki scheduled additional status conferences over the next few months, ordered a division of payment of the costs for a parental alienation evaluation, and appointed a doctor to conduct an evaluation.

{¶26}  Father objected on two main points to Judge Stucki's order to appoint a doctor.  First, Father argued that the doctor Judge Stucki selected to conduct the evaluation was not qualified.  Second, Father challenged Judge Stucki's order because Judge Stucki wrote that the doctor "is not ordered to find, or not find Parental Alienation."

{¶27}  As to Father's first point, he argued that his expert witness, the one who testified during the earlier hearing, was more qualified.  Father also provided a list of other experts he would be satisfied with.  Judge Stucki cancelled the next scheduled hearing to allow the other parties an opportunity to respond.  Father noted in his complaint that Judge Stucki still has not addressed the order appointing a doctor to which Father objected.

{¶28}  Father further contended in his complaint that "[T]his Court has already determined grounds exist to warrant a qualified parental alienation expert to evaluate the children and determine whether they have been the victims of parental alienation * * *."  To this, he has added two additional complaints:  Judge Stucki has ignored this Court's mandate "which expressly requested a parental alienation evaluation" and Judge Stucki's order to the doctor "to find or not find parental alienation" directly contradicts this Court's directive.

{¶29}  To evaluate Father's contentions, we return again to the language of this Court's decision.  Nowhere in the opinion did this Court order that grounds exist to warrant a parental alienation evaluation.  Instead, this Court recognized that the Juvenile Court should have held a

hearing to consider the merits of Father's motion to modify the case plan. *In re M.B.* at ¶ 26. This Court's decision – its mandate – did not expressly require a parental alienation evaluation.

{¶30} Father's second additional complaint concerns his disagreement with Judge Stucki's order to the doctor that "he was not ordered to find, or not find, parental alienation." Father's challenge to this language is based on his view of the mandate, which we have already determined is too narrow. In the context of the entire order, however, Judge Stucki ordered the doctor to clinically assess and/or treat the children for parental alienation and report his findings to the Court. That is consistent with this Court's mandate.

{¶31} Finally, we recognize that mandamus does not lie to control judicial discretion. *State ex rel. Martin v. Russo*, Slip Opinion No. 2020-Ohio-829. Judge Stucki exercised his discretion in appointing a doctor to conduct an evaluation. Even if he abused his discretion in selecting the doctor he did, mandamus does not provide a remedy. *Id. See, also, State ex rel. Tech. Construction Specialties, Inc. v. DeWeese*, 155 Ohio St.3d 484, 2018-Ohio-5082.

*Conclusion*

{¶32} Father sought a writ of mandamus to order Judge Stucki to comply with this Court's mandate. Judge Stucki moved to dismiss pursuant to Civ.R. 12(B)(6). After reviewing the complaint and incorporated attachments, Judge Stucki's motion to dismiss, and Father's response, this Court concludes that it appears beyond doubt from the complaint that Father can prove no set of facts warranting relief, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in Father's favor.

{¶33} Because A.B. is not entitled to a writ of mandamus, the motion to dismiss is granted, and this case is dismissed.

{¶34} Costs are taxed to A.B. The clerk of courts is hereby directed to serve upon all parties not in default notice of this judgment and its date of entry upon the journal. *See* Civ.R. 58.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

DANIEL A. LEISTER, Attorney at Law, for Relator.

SHERRI BEVAN WALSH, Prosecuting Attorney, and COLLEEN SIMS, Assistant Prosecuting Attorney, for Respondent.